FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

JUL 0 8 2026

GARY P. SERDAR
CLERK OF COURT
BY ______
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

CAILE EDWARD NOBLE,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

Case: 2:26-cv-00638
Assigned To : Stewart, Ted
Assign. Date : 7/8/2026
Description: Noble v USA

Criminal Case No. 2:22-cr-00491-TS

**MOVANT CAILE EDWARD NOBLE'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE THE CONVICTION AND SENTENCE, AND MEMORANDUM IN SUPPORT; REQUEST FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL**

## INTRODUCTION

Caile Noble pleaded guilty to buy one thing: the promise that he would never set foot in a state prison and would go home to his family at the age of 79 or 80. That promise is the only reason a 67-year-old man with a GED gave up his trial, his defenses, and two decades of his life. And that promise was empty.

It always was. The Utah murder charge to which the "global" deal was supposedly tied is not a fifteen-year sentence. It is fifteen years to life, with release controlled not by any bargain but by a parole board that, on the State's own paperwork, will not begin to consider Mr. Noble for parole until long past the fifteen-year mark. The "concurrent, no-state-prison, out-at-79" resolution his lawyers sold him was a mirage. And the federal plea agreement they had him sign proves it: by its own terms, that agreement "does not bind any other federal, state, or local" authority. ECF No. 338, PageID.1162 ¶ 13. Counsel induced this plea with a promise the very contract disclaimed any power to keep.

The remedy follows from the wrong. A guilty plea is constitutional only if it is the defendant's knowing and voluntary choice. When counsel's affirmative misadvice about a definite consequence supplies the only consideration the defendant believed he was receiving, the plea cannot stand. Mr. Noble asks the Court to vacate his conviction and sentence—or, at a minimum, to hold the evidentiary hearing that § 2255(b) commands.

One supposed obstacle is no obstacle at all. The plea agreement contains a collateral-review waiver—but that waiver, by its own text, does not reach "the issue of ineffective assistance of counsel." ECF No. 338, PageID.1160 ¶ d(2). The Government drafted the carve-out. It cannot now pretend the door it left open is shut.

## JURISDICTION AND TIMELINESS

This Court has jurisdiction under 28 U.S.C. § 2255(a). The motion is timely under § 2255(f)(1), filed within one year of the date the judgment became final. It is independently timely under § 2255(f)(4): the fact that the promised resolution was illusory could not have been discovered through due diligence until Utah lodged its detainer on or about September 28, 2025, exposing Mr. Noble to a life term. This is his first § 2255 motion; it is not second or successive.

## BACKGROUND

### I. Two Cases, One Negotiation

In 2022 the United States charged Mr. Noble in this Court with conspiracy to distribute methamphetamine and to launder money. 21 U.S.C. §§ 841(a)(1); 846; 18 U.S.C. § 1956(h). At the same time, Salt Lake County charged him with murder, aggravated kidnapping, and aggravated arson arising from the November 2022 death of Joseph Montoya. *State v. Noble*, No. 231909725. Three lawyers—Earl Xaiz and Ronald Yengich on the federal side, Lance Bastian on the state side—treated the two prosecutions as a single package to be resolved together.

## II. The Phone Call That Sold The Plea

On or about November 20, 2024, from a federal holding facility in Pahrump, Nevada, Mr. Noble's lawyers convened a joint telephonic conference. Mr. Yengich did the talking, with Mr. Bastain and Mr. Xaiz on the line. The pitch was specific and unequivocal: the prosecutors had agreed that if Mr. Noble took twenty years federally, the murder sentence would run concurrently; at his age, twenty years was a "life sentence" anyway; he would "never see the inside of a state prison"; he would be "79 or 80" when released; and if he refused, he would "die in there." When Mr. Noble asked his state lawyer point-blank whether that was right, Mr. Bastian answered that it "pretty much sums it up" and called it "a good deal, Caile."

## III. The Paper That Contradicted The Pitch

On February 20, 2025, Mr. Noble signed a Statement in Advance of Plea under Rule 11(c)(1)(C) for 240 months. ECF No. 338. The document recites that "[n]o one has made threats, promises, or representations" outside the agreement, *id.* PageID.1162 ¶ 3; that the agreement "contains all terms," *id.* ¶ 2; and—the detail that matters most—that it is "solely between" Mr. Noble and the United States Attorney and "does not bind any other federal, state, or local" authority, *id.* ¶ 13. No one reconciled that language with the promise that had bought the plea. Mr. Noble did not review the agreement line by line; he signed where he was told, still believing the deal was the global, concurrent, no-state-prison resolution his lawyers had described.

## IV. The Trap Springs

Mr. Noble was sentenced federally on or about July 1-2, 2025, then pleaded guilty in state court on July 21, 2025, to murder (fifteen years to life) and amended arson. After he reached federal prison, Utah's paperwork and a September 28, 2025 detainer revealed the truth: the murder term is indeterminate, parole-controlled, scored by the State at 252

months with a maximum expiration in the year 2125. He would not be home at 79. He faces dying in prison—the precise fate counsel swore the plea would prevent.

## ARGUMENT

### I. The Collateral-Review Waiver Does Not Touch This Motion

Start with the obstacle the Government will lead with, because it dissolves on contact. A defendant may surrender a great deal in a plea agreement, but Mr. Noble did not surrender this. The waiver gives up the right to challenge the conviction and sentence "in any collateral review motion … including … a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." ECF No. 338, PageID.1160 ¶d (2). This is an ineffective-assistance motion. It is the one claim the Government carved out of its own waiver. There is nothing here to enforce.

Even if the text were silent, the law would supply the same answer. The Tenth Circuit holds that a "waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). A waiver accepted in reliance on delinquent representation cannot become the instrument that buries the claim of that delinquency. And enforcing this one would work the very "miscarriage of justice" the en banc court reserved as a backstop in *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004), because the waiver and the plea stand or fall together; a man cannot knowingly waive his right to challenge a bargain he did not knowingly make.

To hold otherwise would turn the plea form into a trap that closes on the misadvised. If a lawyer's promise of a phantom deal could be insulated by the boilerplate that same lawyer told the client to sign, the Sixth Amendment would expire at the door of

every plea room in the district. It does not, and the Government's own carve-out concedes as much.

## II. Counsel's Performance Fell Below Any Standard The Constitution Tolerates

This is not a case of an optimistic prediction that missed. Defense lawyers misjudge guideline ranges and parole dates every day, and the law forgives the honest miss. What the law does not forgive is the affirmative misrepresentation of a negotiated term—telling a client a deal guarantees a result when no such deal exists. *Strickland v. Washington*, 466 U.S. 668, 688 (1984), asks whether counsel's performance fell below "an objective standard of reasonableness," and the Sixth Amendment polices the plea bargain as strictly as the trial. *Lafler v. Cooper*, 566, U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Affirmative misadvice about a "succinct, clear, and explicit" consequence of a plea is deficient performance, not strategy. *Padilla v. Kentucky*, 559 U.S. 356, 368 (2010).

Measured against that standard, the deficiency here is stark—and it is documented. Counsel told Mr. Noble he would "never see the inside of a state prison." The charge was fifteen years to life. Counsel told him he would be home at 79. The State will not reach his parole until well past that. Counsel sold a "concurrent" global resolution as the heart of the bargain, then handed Mr. Noble a federal agreement reciting that it "does not bind any other ... state ... authorit[y]." ECF No. 338, PageID.1162 ¶ 13. How could competent counsel let an elderly client sign a document that disclaimed, in writing, the one promise that induced him to sign it—and never explain the contradiction? How could counsel certify a knowing plea and a factual basis, *id.* PageID.1163, while the client labored under a misunderstanding counsel themselves had planted? The questions answer themselves. A lawyer who papers over the gap between the promise and the paper has not counseled his client to the standard guaranteed by the Sixth Amendment.

The stakes of getting this right are not abstract. A plea is the most consequential decision a defendant ever makes, and he makes it through his lawyer's eyes. When those eyes report a deal that is not there, the adversary system has failed at the one moment it cannot afford to fail.

**III. The Misadvice Changed The Outcome**

Strip away the phantom deal and there was nothing left to plead for. Prejudice in the plea context asks whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court has made plain that this inquiry turns on what mattered to this defendant, and that prejudice may exist even where acquittal was unlikely—so long as the misunderstood consequence was the one driving the decision. *Lee v. United States*, 582 U.S. 357, 367-69 (2017).

For Mr. Noble, the driving consideration was singular and undisguised: not dying in prison. He was 68. A binding twenty-year federal term was, by counsel's own framing, "a life sentence" he would accept only because the global deal meant the murder case would fold into it and he would still go home. Remove that premise and the federal plea bought him nothing he did not already face—a life-equivalent term—while costing him every defense he had, including his challenge to the money-laundering theory and to the drug quantities laid at his feet. Would a rational person in his position have signed away his trial for a benefit that did not exist? *Lee* makes the question his to answer, and the record answers it: there is far more than a reasonable probability he would have gone to trial.

A plea induced by a mistake about its central benefit is not a voluntary plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). What was taken from Mr. Noble was not a better outcome—it was the informed choice the Constitution guarantees him.

## IV. At The Very Least, The Court Must Hold A Hearing

Even if the Court is not prepared to vacate on the papers, it cannot deny this motion on them. Section 2255(b) entitles a movant to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The Government will waive the plea form's recitals—not outside promises, satisfied with counsel, all terms disclosed. But *Blackledge v. Allison*, 431 U.S. 63, 74-76 (1977), holds precisely that such recitals, while weighty, are "not insurmountable," and that specific, credible allegations of off-the-record promises demand a hearing rather than summary dismissal. The allegations here are specific: a dated call, named participants, quoted words, a corroborating recorded call of November 25, 2025, in which Mr. Bastian conceded the promise was made (attributing it to Mr. Yengich), and institutional logs that will confirm the conference occurred. Boilerplate cannot "conclusively" refute what it never addressed—a promise about the state sentence that the federal agreement expressly placed outside its four corners. ECF No. 338, PageID.1162 ¶ 13. The Court should order production of counsel's files and the change-of-plea transcript, appoint counsel under Rule 8(c) of the Rules Governing § 2255 Proceedings, and set the matter for hearing.

When the record raises a fair question—whether a man was talked into life behind bars on a false promise—the answer is sworn testimony, not a signature on a form he did not understand.

## CONCLUSION

The plea was brought with a promise that was empty and that the agreement itself disclaimed. The Court should vacate Mr. Noble's conviction and sentence and permit him to withdraw his plea or, at a minimum, order an evidentiary hearing.

Dated: 06-26-2026

Caile Edward Noble

Caile Edward Noble
Reg. No. 10278-081 | Unit A
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

## VERIFICATION

I, Caile Edward Noble, declare under penalty of perjury under 28 U.S.C. § 1746 that the factual statements in this motion are true and correct to the best of my knowledge.

Dated: June 26, 2026

Caile Edward Noble

Caile Edward Noble

# Certificate of Service

I thereby certify that on this 29th day of June, 20 26 I placed with staff noted below my first class, postage prepaid envelope addressed to:

**The United States District Court**
**for the District of Utah**
**351 S.W. Temple Street**
**Salt Lake City, UT 84101**

containing my **Memorandum in Support of § 2255 Motion**
for outbound legal mail with:

[X] A.M. Legal Mail, or

[ ] Unit Mail Box because a.m. legal mail was not available to me, specifically ____________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, **487** U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

Caile Edward Noble

**Caile Edward Noble**