IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

---

CAILE EDWARD NOBLE,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. ____________________

Criminal Case No. 2:22-cr-00491-TS

---

**DECLARATION OF CAILE EDWARD NOBLE (28 U.S.C. § 1746)**

---

I, Caile Edward Noble, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1. I am ~~68~~ 67 CEN years old. My education is a GED. I am incarcerated at FCI Sandstone, Reg. No. 10278-081. I make this declaration in support of my motion under 28 U.S.C. § 2255.

2. I was charged federally in this Court (No. 2:22-cr-00491-TS) with drug conspiracy and money laundering. At the same time I was charged in Utah state court (No. 231909725) with murder, aggravated kidnapping, and aggravated arson. My federal lawyers were Earl Xaiz and Ronald Yengich. My state lawyer was Lance Bastian. They handled the two cases together as one "global" deal.

3. On or about November 20, 2024, while I was held in Pahrump, Nevada, my lawyer set up a telephone call with me. Mr. Yengich did most of the talking; Mr. Bastian and Mr. Xaiz were also on the line. I was given permission to leave my work assignment for the call, and the call was logged by the facility.

4. Based on my memory, the call content was as follows:

**Mr. Yengich:** "We've got Lance [Bastian] and Earl [Xaiz] on the phone. We've spoken to both the federal and state prosecutors. They've agreed that if you plea to 20 years on the fed side, at your age they'd consider that a life sentence. They'll agree to run the sentences concurrent and you will never see the inside of a state prison. Once you're done with the fed sentence you'll be done. You'll be 79-80 when you get out. If you don't take the deal Caile, you'll die in there."

**Mr. Noble:** "Lance, is that your understanding?"

**Mr. Bastian:** "Yeah, that pretty much sums it all up, this is a real good deal."

5. I believed them. The only reason I agreed to plead guilty in the federal case was to avoid dying in prison by having the murder case run concurrently and never serving state prison time. I understood that once my federal time was done, I would be done and could go home to my family.

6. I discussed the proposed deal with all of my sons, my daughter-in-law, and a friend of the family named CW.

7. On February 20, 2025, I signed a Statement in Advance of Plea in the federal case. No lawyer read it to me line by line. No one told me that the document said it "does not bind any other federal, state, or local" authority, or that it said no promises had been made to me outside the written agreement. If anyone had explained that this paper cancelled the promise about my state case—that it did not and could not make the murder sentence run concurrently or keep me out of state prison—I would not have signed it. I signed believing the global deal my lawyers described was still the deal.

8. No one ever told me, on the November 20, 2024 call or before I pleaded, that the murder charge was "15 years to life," that my release would be decided by a parole board, or that I could be held well past 15 years. If I had known any of that, I would not have pleaded guilty in the federal case. I would have gone to trial and kept my defenses,

including my challenge to the money-laundering charge, to the amount of drugs blamed on me, and to the unreasonable searches and seizures in my case.

9. I never saw the Federal Presentence Report. I did not object to it because I thought the binding plea made that unnecessary.

10. I pleaded guilty in the federal case on or about July 1-2, 2025, and in the state case on or about July 21, 2025.

11. After I got to federal prison, I received Utah paperwork and, on or about September 28, 2025, a detainer showing I face 15 years to life and that my first parole consideration would come well after 15 years. That is when I learned the deal my lawyers described did not exist.

12. On or about November 25, 2025, I spoke with Mr. Bastian by recorded facility phone at Sandstone Federal Correctional Institution. As I remember it, the call went as follows: I questioned Mr. Bastian about the global plea deal. Mr. Bastian responded: "I never told you [you'd never do a day in state prison; Ron told you that." I replied: "Lance, you were on the line. I asked you what you thought and you said, 'That pretty much sums it up. This is a good deal Caile.'" I have asked my facility to preserve the call

13. I make this declaration freely. The statements above are true.

Executed on June 26, 2026, 2026 at Sandstone, Minnesota.

Caile Edward Noble

Caile Edward Noble
Reg. No. 10278-081

# Certificate of Service

I thereby certify that on this 29th day of June, 2026 I placed with staff noted below my first class, postage prepaid envelope addressed to:

**The United States District Court**
**for the District of Utah**
**351 S.W. Temple Street**
**Salt Lake City, UT 84101**

containing my **Declaration in Support of § 2255 Motion** for outbound legal mail with:

[x] A.M. Legal Mail, or

[ ] Unit Mail Box because a.m. legal mail was not available to me, specifically ______________________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, 487 U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

Caile Edward Noble

**Caile Edward Noble**