MELISSA HOLYOAK, United States Attorney (#9832)
Briggs Matheson, Assistant United States Attorney (#18050)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: briggs.matheson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CAILE EDWARD NOBLE<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 2:26-cv-00638-TS<br><br>**UNITED STATES' RESPONSE TO PETITIONER'S MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**<br><br>Judge Ted Stewart |

*Pro se* petitioner Caile Noble is a 68-year-old convicted murderer currently serving a 240-month sentence after he pled guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Crim. ECF. 388.[1] He offers in a § 2255 motion two reasons the Court should vacate his conviction and sentence. First, he contends that his counsel was constitutionally ineffective by affirmatively misleading him about the consequences of his guilty plea.

[1] This brief uses the following abbreviations: (i) "Crim. ECF" refers to the docket in *United States v. Noble*, No. 2:22-cr-491-TS (D. Utah); (ii) "PSR" refers to the Presentence Investigation Report prepared in case no. 2:22-cr-491-TS, Crim. ECF 376; (iii) "ECF" refers to the docket in the above-captioned collateral matter; (iv) "Plea Tr." refers to the transcript of Noble's change-of-plea hearing in case no. 2:22-cr-491-TS, held on April 3, 2025, and attached hereto as Exhibit A; (v) "Sentencing Tr." refers to the transcript of Noble's sentencing hearing in case no. 2:22-cr-491-TS, held on July 1, 2025, and attached hereto as Exhibit B.

Specifically, Noble alleges that his attorney incorrectly advised him that the plea agreement in his federal criminal case was part of a "global" resolution that encompassed his wholly separate state charges for murder, and that "if he pleaded guilty federally," he would "never see the inside of a state prison" and "would be released at age 79-80." ECF 1 at 4. Second, and for the same reason, he maintains that his federal guilty plea was not knowing, voluntary, and intelligent, in violation of the Fifth Amendment. *Id.* at 5.

Noble's petition misses the mark. He fails to show the defective performance or prejudice necessary to establish a violation of his Sixth Amendment rights. His Fifth Amendment claim is likewise meritless and waived. The Court should deny the petition.

## I. BACKGROUND

### A. Noble is federally indicted for drug trafficking and charged separately with first-degree murder by the State of Utah

Four years ago, federal agents determined that Noble was operating a large-scale drug trafficking organization (DTO) in the Salt Lake Valley. PSR at 4 ¶ 6. For months, agents intercepted Noble's communications with other members of the DTO, surveilled him as he traveled between Los Angeles and Utah to pick up drugs, watched him meet with other drug traffickers, and monitored his distribution of drugs to his confederates. *Id.* at 4-10 ¶¶ 7-46.

While that investigation was still ongoing, on November 24, 2022, emergency responders in South Jordan, Utah, received a call about a car "that was fully engulfed in flames." *Id.* at 19 ¶ 92. Firefighters extinguished the flames and pried open the trunk where they found the partially charred body of J.M. *Id.* South Jordan police detectives later determined that J.M. had fought with Noble's son earlier that night, "which led to [J.M.] being unconscious and being placed in the trunk" of his car. *Id.* The detectives later obtained surveillance videos and witness statements confirming that Noble and two other men were present when J.M.'s vehicle was lit on

fire. *Id.* An autopsy determined that J.M. suffered a broken nose, skull fracture, and a broken trachea before he was burned alive in the trunk of his car. *Id.* at 20 ¶ 92.

Five days later—while the state investigation of J.M.'s murder was underway—federal agents investigating the DTO arrested Noble and several of his co-conspirators. *Id.* at 10 ¶ 47. They also executed search warrants at two residences associated with the DTO, where they recovered substantial quantities of methamphetamine and cocaine. *Id.* at 10-11 ¶¶ 49-51, 13-14 ¶ 66. During an interview following his arrest, Noble admitted that he trafficked multiple pounds of methamphetamine from Los Angeles to Utah for distribution. *Id*. at 12 ¶ 52.

Noble and several other members of the DTO were charged by complaint for conspiring to distribute methamphetamine. *Id.* at 4 ¶ 1; Crim. ECF 1. A federal grand jury later indicted Noble and ten others for, among other things, conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to commit money laundering, in violation of 19 U.S.C. § 1956(h). Crim. ECF 40; PSR at 4 ¶ 2.

Noble was charged separately by the State of Utah for first-degree murder, aggravated kidnapping, and aggravated arson, for the killing of J.M. PSR at 19 ¶ 92.

**A. Noble pleads guilty in federal court to conspiracy to distribute methamphetamine and conspiracy to launder money**

In April 2025, Noble pled guilty to counts 1 and 2 of his federal indictment (conspiracy to distribute methamphetamine and conspiracy to launder money) pursuant to a Rule 11(c)(1)(C) plea agreement with the United States. *See generally* Crim. ECF 338. In the agreement, Noble stipulated that a sentence of 240-months' imprisonment was reasonable. *Id.* at 5 ¶ 12(b). He also affirmed that

- he received "assistance of counsel in reviewing, explaining, and entering into" the plea agreement (*id.* at 1);

- the plea agreement (i) contained "all terms of the agreement" between him and the United States, (ii) the Court would be "specifically advised" about any "additional terms" "on the record, at the time of [Noble's] guilty plea," and (iii) neither the United States nor he could "have terms of this plea agreement that are not disclosed to the Court" (*id.* at 8 ¶ 2; *see also id.* at 5 ¶ 12);

- neither Noble's attorney nor the United States had promised him that he would receive any "form of leniency because of [his] plea" (*id.* at 9 ¶ 4);

- he had "discussed this case and this plea" with his lawyer as much as he wished, was "satisfied" with his lawyer, and had "no additional questions" or "mental reservations concerning the plea" (*id.* ¶¶ 5-6, 8);

- his "decision to enter this plea was made after full and careful thought; with the advice of counsel, and with a full understanding of [his] rights, the facts and circumstances of the case and the consequences of the plea" (*id.* ¶ 7); and

- he understood and agreed to all of the terms in the agreement and did not "wish to make changes to this agreement" (*id.* ¶ 9).

Noble further confirmed that he understood and agreed that his "plea agreement is solely between [him] and the United States Attorney for the District of Utah and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities." *Id.* at 8 ¶ 13. He also waived his right to collaterally attack his conviction and sentence, "including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." *Id.* at 6 ¶ 12(d)(2).

At the change-of-plea hearing, the Court conducted a thorough Rule 11 plea colloquy with Noble, during which Noble confirmed, among other things, that: (i) he had a chance to speak with his attorney "about the consequences of pleading guilty" and was able to "ask all the questions [he] want[ed]"; (ii) he was "very grateful and satisfied" with his attorney's representation; (iii) he "very thoroughly" reviewed the plea agreement, and received answers to "all the questions" he had about it; (iv) he understood his guidelines calculations and the maximum penalties for his charged offenses; and (v) he agreed that a sentence of 240 months' imprisonment was "a reasonable sentence." Plea Tr. at 3-14. The Court found that Noble's

guilty plea was knowing, voluntary, and supported by a factual basis that supported every element of the charged offenses. *Id.* at 14.

Sentencing took place three months later, in July 2025. The Court confirmed that Noble had reviewed the PSR with his attorney and that neither party had any objection to the report's Guidelines calculations. Sentencing Tr. at 3-4. The government moved to dismiss the remaining charges against Noble. *Id.* at 7. The Court then sentenced Noble to the parties' agreed-upon sentence of 240 months in prison, followed by five years of supervised release. *Id.* at 8; Crim. ECF 388 (Judgment).

Three weeks later, on July 21, 2025, Noble pled guilty to first degree murder and aggravated arson in his state case. *See State of Utah v. Noble*, Case No. 231909725.

**B. Section 2255 Motion**

On July 8, 2026, Noble filed his *pro se* motion pursuant to 28 U.S.C. § 2255. ECF 1. In it, he asserts two grounds for relief. First, he contends that his defense attorneys "affirmatively misadvised" him that they had negotiated a "global resolution" that encompassed his federal drug and money laundering charges and his state murder and arson charges. *Id.* at 4. According to Noble, his attorneys informed him that if he pled guilty to the federal charges, "his contemporaneous Utah murder case would run concurrently," he would "never see the inside of a state prison," and he "would be released at age 79-80." *Id.*; *see also* ECF 1-2 at 1-3. That advice, Noble asserts, "was false," because his guilty plea to the Utah murder charge "carrie[d] an indeterminate term of fifteen years to LIFE, with release controlled by the Utah Board of Pardons and Parole"—something Noble claims he did not know until after he had already pled guilty in both proceedings. ECF 1 at 4; *see also* ECF 1-1 at 5-6.

Second, and for the same reasons, Noble claims that his guilty plea was not knowing, voluntary, and intelligent under the Fifth Amendment. ECF 1 at 5. Noble maintains that his guilty plea to the federal charges was "induced by a material misapprehension going to the very benefit bargained for"—namely, a "global disposition" that "secured concurrent service and freedom from state imprisonment, with release at age 79-80." *Id.*[2]

## II. ARGUMENT

### A. Noble's guilty plea was not rendered involuntary or unknowing due to any ineffective assistance of counsel

In his first claim for relief, Noble contends that his conviction and sentence should be vacated because his attorneys affirmatively misadvised him about the consequences of pleading guilty to his federal drug and money laundering charges. ECF 1 at 4. Not so.

Defendants have a Sixth Amendment right to counsel that extends to the plea-bargaining process. *Missouri v. Frye*, 566 U.S. 134, 140-41 (2012). The "two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). That test requires Noble to show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that prejudice resulted. *See generally Strickland v. Washington*, 466 U.S. 668 (1984). Noble fails to make either showing.

[2] Noble also alleges that his counsel "failed to preserve or pursue available challenges to the drug quantity" attributed to him and the "aggravating-role enhancement." *Id.* at 7. Noble concedes, however, that he does not "press[]" these issues "as independent grounds" for relief—rather, they "are advanced as part of the prejudice flowing from Grounds One and Two." *Id.* The United States addresses these prejudice arguments in Part II.A.2 *infra*.

### 1. Noble fails to show that his lawyer's performance fell below an objective standard of reasonableness

To satisfy *Strickland*'s performance prong, Noble must show that his attorney "'materially misinform[ed]'" him of "'the consequences of the plea.'" *United States v. Lee*, 535 F. App'x 677, 681 (10th Cir. 2013) (unpublished) (quoting *United States v. Carr*, 80 F.3d 413 (10th Cir. 1996)). In doing so, Noble must overcome the "strong presumption" that his attorney provided reasonable professional assistance by showing that the "representation was unreasonable under prevailing professional norms." *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008); *Strickland*, 466 U.S. at 689; *see also Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (explaining that review of counsel's performance under this standard "must be highly deferential"). That is too high a bar for Noble to clear.

Noble does not contend that his attorneys made *any* material misrepresentation about any of the specific terms of his plea agreement with the United States. Nor could he. That agreement did not, of course, purport to be a "global" resolution covering all of Noble's federal *and* state criminal proceedings, nor did it contain any provision regarding his expected sentence in his state murder case. Quite the opposite: the agreement expressly disclaimed having any binding effect whatsoever on any other prosecuting authority. Crim. ECF 338 at 8 ¶ 13. It also explicitly prohibited Noble from entering into *any* terms that were extrinsic to the agreement and "not disclosed to the Court." *Id.* at ¶ 2. Noble testified at the change-of-plea hearing that he "[v]ery thoroughly" reviewed that agreement, which he acknowledged contained "all terms of the agreement between [him] and the United States." Plea Tr. at 11; Crim. ECF 338 at 8 ¶ 2. He further swore that he agreed with all of those terms. Crim. ECF 338 at 9 ¶ 9. That included the provision confirming that neither Noble's attorney nor the United States had promised him that he would receive *any* "form of leniency because of [his] plea." *Id.* at 9 ¶ 4. And although the

plea agreement specifically contemplated that any "additional terms" not included in the written document would be brought to the Court's attention, "on the record, at the time of [Noble's] guilty plea," (*id.* at 8 ¶ 2), Noble said nothing at the change-of-plea hearing about any global resolution or additional promises bearing on his decision to plead guilty to his federal charges.

The Tenth Circuit has consistently denied (albeit in unpublished decisions) similar ineffective-assistance claims that are flatly contradicted by the defendant's plea agreement and Rule 11 colloquy. For example, in *United States v. Whittaker*, 619 F. App'x 769 (10th Cir. 2015) (unpublished), the defendant claimed that his plea was not "knowing and voluntary" because it was "induce[d]" by his attorney's "false representation" that he would receive a shorter sentence. *Id*. at 772. The Tenth Circuit rejected the argument, because the defendant's plea agreement expressly stated "that no promise was made to induce him to plead guilty, other than the terms of the written plea agreement[.]" *Id.*

Noble's claim that he was falsely induced into pleading guilty based on his counsel's representations about his potential state sentence is likewise "contradicted by the record." *United States v. Dixon*, 501 F. App'x 803, 805 (10th Cir. 2012) (unpublished). Noble swore that no one made any "promises[] or representations" that "caused [him] to plead guilty, other than the provisions set forth" in his plea agreement with the United States. Crim. ECF 338 at 8 ¶ 3. And Noble fails to identify any material misrepresentation that his counsel made with respect to *that* plea agreement.

Tellingly, this is not the first time Noble has asked this very Court to vacate a conviction because he was purportedly coerced into pleading guilty based on promises extrinsic to his plea agreement. In 2004, Noble pled guilty to possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). *See United States v. Noble*, No. 2:03-cr-88-TS (D. Utah),

ECF 69 (Statement in Advance of Plea). There, as here, he agreed that the plea agreement contained the "only terms and conditions" for his agreement with the government. *Id.* at 4 ¶ 11; *see also id.* at 6. At the change of plea hearing, the Court informed Noble that the penalty for his conviction was "a minimum of five years, and a maximum of forty years," and that the Court could not "determine what guideline range applies to you until after a presentence report has been compiled by the probation office." *Noble v. United States*, No. CIV. 2:07-CV-158 TS, 2009 WL 1152151, at *2 (D. Utah Apr. 27, 2009). Later at the sentencing hearing, the Court calculated Noble's Guidelines range to be 188 to 235 months, and sentenced him to the low end of the range. *Id.* at *3.

Noble then filed a § 2255 motion claiming that his defense counsel "coerced" him into pleading guilty "based on counsel's agreement(s) with the then counsel for the government" to a sixty-month sentence. *Id.* at *7. This Court rejected Noble's claim, observing that Noble had "stated, in writing and under oath in open court that nothing had been promised him other than that contained in the written plea agreement." *Id.* The Court further explained that even if Noble's counsel had "miscalculate[d] . . . the possible sentence," that did not amount to ineffective assistance under Tenth Circuit precedent. *Id.* (discussing *United States v. Rhodes*, 913 F.2d 839 (10th Cir. 1990)).

Noble's latest ineffective-assistance claim fails for similar reasons. Noble has not shown that his counsel's performance during the plea stage was "completely unreasonable." *United States v. Chavarin*, No. 21-4105, 2023 WL 2706696, at *3 (10th Cir. Mar. 30, 2023) (unpublished). Indeed, even if counsel's predictions about what would happen in Noble's state case were incorrect, that does not amount to constitutionally deficient performance with respect to the advice given about Noble's *federal* plea agreement. It is "well-established" in this Circuit

that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570–71 (10th Cir. 1993); *see also United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) ("[S]tanding alone, an attorney's erroneous sentence estimate does not render a plea involuntary."); *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988) ("counsel's assurance that Estrada would not receive 'much of a sentence'" was "insufficient to show that counsel's performance was constitutionally deficient"); *United States v. Figueroa-Espinoza*, No. 21-4140, 2023 WL 2904943, at *9 (10th Cir. Apr. 12, 2023) (unpublished) (listing cases). And as Noble's previous collateral case shows, that is true when the alleged erroneous prediction concerns the sentence for the crime to which the defendant has pled guilty. That same principle applies with even greater force here, where (i) the alleged erroneous sentencing prediction concerned an entirely separate case, based on separate facts, and prosecuted by a separate sovereign, and (ii) the plea agreement expressly disclaims binding other jurisdictions.[3] Simply put, whatever Noble's attorney might have estimated his state murder sentence would be, that kind of "erroneous strategic prediction" about the outcome of *another* proceeding simply "does not constitute deficient performance" in *this* case.[4] *Chavarin*, 2023 WL 2706696, at *3.

[3] To the extent Noble contends that he was misled about the length of his 240-month federal prison sentence—*i.e.*, that he would be released when he reached "age 79-80" after serving only about 130 months (ECF 1 at 4)—that contention defies the plain terms of Noble's Rule 11(c)(1)(C) plea agreement, arithmetic, and common sense. On top of that, for the reasons discussed above, any erroneous estimation about the ultimate duration of Noble's time in federal prison would not be sufficient to establish counsel's deficient performance.

[4] Indeed, Noble's complaints about the advice he received regarding his state sentence (e.g., whether he would spend time in state prison) sound in *state* postconviction claims, not federal § 2255 proceedings involving an entirely separate case.

**2. Noble cannot show prejudice**

Even if Noble could show that his lawyer provided constitutionally deficient advice about the effect of his federal guilty plea on his state murder sentence, Noble cannot satisfy *Strickland*'s second prong. "[I]t is often quite difficult for [defendants] who have acknowledged their guilt . . . to satisfy *Strickland*'s prejudice prong." *United States v. Dominguez*, 998 F.3d 1094, 1112 (10th Cir. 2021) (quotation marks omitted) (second alteration in original). That's because in the guilty plea context, a defendant must show a reasonable probability that, "but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quotation omitted) (alteration in original). A reasonable probability in this context "necessitates a substantial, not just conceivable, likelihood of a different result." *Id.* at 1111 (cleaned up).

To determine whether a defendant would have insisted on "going to trial," *id.*, courts consider "the 'totality of the evidence' concerning [the defendant's] defense priorities," *United States v. Aguayo-Montes*, 169 F.4th 1205, 1216 (10th Cir. 2026) (quoting *Lee v. United States*, 582 U.S. 357, 367 (2017)). This inquiry is "largely objective." *United States v. Kearn*, 90 F.4th 1301, 1306 (10th Cir. 2024); *see also Bonney v. Wilson* ("*Bonney I*"), 754 F.3d 872, 884 (10th Cir. 2014) ("[W]e have been unable to locate any Supreme Court precedent, regardless of factual context, that clearly holds the *Strickland* [prejudice] standard—in whole or in part—is subjective."). In *Padilla v. Kentucky*, the Supreme Court clarified that, "to obtain relief on an ineffective-assistance-of-counsel claim under *Strickland*, a defendant challenging his guilty plea 'must convince the court that [his] decision to reject the plea . . . would have been *rational under the circumstances*.'" *Dominguez*, 998 F.3d at 1112 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)) (emphasis in original). The Tenth Circuit has "incorporated and subsumed this 'rationality' factor into *Strickland*'s reasonable-probability prejudice inquiry." *Id.*; *see also*

*Kearn*, 90 F.4th at 1306. *Padilla*'s "rationality" requirement thus sets "an objective *floor*" or "threshold" a petitioner must satisfy before a court will "ascertain[]"—based on "the individual defendant's statements and conduct"—whether "he has satisfied the more demanding 'reasonable probability' threshold." *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) (citations omitted); *Dominguez*, 998 F.3d at 1112.

Noble fails both tests. To start, it would not have been objectively rational for Noble to reject the favorable plea deal to which he agreed. Noble affirmed in his plea agreement and during his plea colloquy with the district court that he was "very grateful and satisfied" with his lawyer's services. Crim. ECF 338 at 9 ¶¶ 5-6, 8; Plea Tr. at 6. He had good reasons to say so: Noble's attorney negotiated an especially favorable bargain on his client's behalf. In exchange for his guilty plea, the government agreed to dismiss *six* additional methamphetamine and money laundering counts against Noble. Sentencing Tr. at 7. For the two charges to which he pled guilty, Noble faced a statutory maximum life sentence and a Guidelines range of 262 to 327 months. PSR at 24 ¶ 124-25; Plea Tr. at 8-9. By pleading guilty pursuant to a Rule 11(c)(1)(C) agreement, Noble received a sentence (240 months) twenty-two months *below* the low end of his Guidelines range.

The Tenth Circuit has repeatedly held (in unpublished decisions) that it would not have been objectively rational for a defendant to reject comparably favorable plea deals. For example, in *United States v. Gilchrist*, a § 2255 petitioner alleged that his trial counsel had provided ineffective assistance of counsel by, among other things, "failing to seek withdrawal of the guilty plea based on [petitioner's] misunderstanding of the potential sentence." *United States v. Gilchrist*, 685 F. App'x 638, 641 (10th Cir. 2017) (unpublished). The Tenth Circuit rejected the claim because the petitioner could not show "a reasonable probability that absent his attorney's

conduct he would have insisted on a trial." *Id.* at 642. In particular, the Court observed, a "rational defendant" facing a guidelines range of 262 to 327 months "would not have rejected a plea agreement carrying a stipulated sentence of only 180 months." *Id.*; *see also, e.g. United States v. Palmer*, 630 F. App'x 795, 797 (10th Cir. 2015) (unpublished) ("[T]he fact that in all probability a much worse outcome awaited Defendant had he rejected the plea agreement certainly suggests that to plead other than he did would have been irrational."); *United States v. Tuakalau*, 562 F. App'x 604, 609 (10th Cir. 2014) (unpublished) ("[R]ejecting a plea bargain dismissing numerous charges and guaranteeing a thirty-year sentence would not have been rational.") (citing *Padilla*, 559 U.S. at 372); *United States v. Maujer*, No. 21-6087, 2021 WL 5458425, *1 (10th Cir. Nov. 23, 2021) (unpublished) (petitioner could not show prejudice, despite assertion that he would have gone to trial, where the district court granted a substantial sentencing variance). It would not have been objectively "'rational under the circumstances'" for Noble to reject the government's below-Guidelines plea deal either. *Dominguez*, 998 F.3d at 1112 (quoting *Padilla*, 559 U.S. at 372).

That is especially true because Noble neither "assert[s] that he is innocent of the charged crime[,]" nor does he identify any "weaknesses" in the government's case that "would have made it more rational for him to reject the plea agreement" and proceed before a jury. *Id.* at 1114. All he offers are *post hoc* assertions that he would not have pled guilty were it not for his counsel's errors. And as the Tenth Circuit has explained, that is not enough to satisfy *Padilla*'s objective "rationality requirement." *Headley v. United States*, 804 F. App'x 973, 979 (10th Cir. 2020) (unpublished); *see also United States v. Saucedo-Avalos*, 753 F. App'x 561, 564 (10th Cir. 2018) (unpublished) (defendant's "mere allegation of having insisted on going to trial is not enough" to show prejudice where "the record did not reveal any viable defense to the charge").

Nor can Noble show—as he must—"a reasonable probability that he would have gone to trial absent counsel's errors." *Heard*, 728 F.3d at 1184 (quotation marks omitted). To determine whether a defendant has met that "more demanding" standard, *id.*, this Court does "not ascribe *any* weight" to his "mere allegation that he would have proceeded to trial," *United States v. Clark*, 596 F. App'x 696, 702 (10th Cir. 2014) (unpublished) (citing *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993)) (emphasis added). It "instead look[s] to contemporaneous evidence" of his "expressed preferences" concerning the plea. *Lee*, 582 U.S. at 369. "*[P]ost hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" are cheap; corroboration is key. *See id.* (instructing courts not to "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies").

The best "contemporaneous evidence" of a defendant's "expressed preferences" are his sworn statements at the change-of-plea hearing. *Id.* In *Lee*, "[e]veryone agree[d] that Lee"—a noncitizen—"received objectively unreasonable representation" when his attorney erroneously informed him that the government "would not deport him if he pleaded guilty." *Id.* at 360. The question remaining in *Lee* was whether he could "show he was prejudiced as a result." *Id.* To answer that question, the Supreme Court scrutinized Lee's plea colloquy and determined that he had shown a reasonable probability that he "would have gone to trial" absent his lawyer's bad advice based on the following exchange:

> When the [district] judge warned [Lee] that a conviction "could result in your being deported," and asked "[d]oes that at all affect your decision about whether you want to plead guilty or not," Lee answered "***Yes, Your Honor***." When the judge inquired "[h]ow does it affect your decision," Lee responded "***I don't understand***," and turned to his attorney for advice. Only when Lee's counsel assured him that the judge's statement was a "standard warning" was Lee willing to proceed to plead guilty.

*Id.* at 369 (citations omitted) (third and fourth alterations in original) (emphasis added). Lee's

plea colloquy left "no reason to doubt" his *post hoc* assertion that he would not have pled guilty with different advice from his lawyer. *Id.* at 370. In other words, Lee's plea colloquy corroborated his later allegation about what he would have done had he received competent advice of counsel.

Not so here. Noble's contention that he would have refused the plea agreement and demanded a trial (ECF 1-2 at 2 ¶ 8) is "belied by the representations he made at the plea hearing," which "'carry a strong presumption of verity,'" *Rippey v. Utah*, 783 F. App'x 823, 826 (10th Cir. 2019) (unpublished) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also id.* (noting that a defendant's contrary statements at the plea hearing will "'constitute a formidable barrier in any subsequent collateral proceedings'") (quoting *Blackledge*, 431 U.S. at 74). As noted, at the change-of-plea hearing, Noble affirmed his understanding of the agreement, including the 240-month prison sentence that he agreed was reasonable. Plea Tr. at 12. Noble did not express any reservations or concerns about his guilty plea. Nor did he indicate to the Court that there were any other terms of the plea that were *not* included in the written agreement, such as a "global" resolution that encompassed his state murder charge. *See* Crim. ECF 338 at 8 ¶ 2 (agreeing that neither Noble nor the United States could "have terms of this plea agreement that are not disclosed to the Court"). And Noble repeatedly emphasized that he had "[v]ery thoroughly" reviewed the agreement, asked his lawyers any and all questions that he had regarding its terms, received answers to all of those questions, and was "very grateful and satisfied" with his representation. Plea Tr. at 6, 11.

"In light of the court's careful explanation of the plea's consequences" and Noble's "testimony that he understood those consequences," his "allegation that he would have gone to trial" with different advice from his attorney "is insufficient to establish prejudice." *United*

*States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007); *see also United States v. Sanchez-Leon*, 764 F.3d 1248, 1260 (10th Cir. 2014) (rejecting the argument that defendant's attorney failed to explain the plea agreement because that "conflict[ed] with statements he made at the plea hearing" and did not "rebut the presumption that his statements made in court are true"); *Gordon*, 4 F.3d at 1571 (same); *Rippey*, 783 F. App'x at 826 (same).[5]

Beyond the plea colloquy, the "best evidence of whether [a] defendant in fact would have changed his plea and insisted on going to trial" is "the strength of the prosecutor's case." *United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022) (quotation omitted); *see also, e.g.*, *United States v. Rodriguez*, 49 F.4th 1205, 1214 (9th Cir. 2022) (discussing the factors relevant to the court's assessment whether a defendant would have gone to trial, including "how likely the defendant would be to prevail at trial"). As the Supreme Court observed in *Lee*, "a defendant who has no realistic defense to a charge supported by sufficient evidence" will often be "unable to carry his burden of showing prejudice from accepting a guilty plea." 582 U.S. at 366-67.

That's certainly the case here. As noted, Noble does not contend that he is innocent of his drug or money-laundering charges, or that he had any viable defenses to them that he would have pursued at trial. Nor could he. The evidence against Noble was overwhelming. It included, among other things, an abundance of recorded communications in which Noble arranged to distribute drugs and launder money with his co-conspirators; substantial in-person surveillance monitoring showing Noble engaged in drug trafficking; multiple searches of

[5] Noble's claim that he would not have pled guilty if only he knew about Utah's indeterminate sentencing regime (ECF 1 at 4) is also difficult to credit because his murder case was not the first time he was sentenced by the State of Utah. Two decades ago, Noble pled guilty to a third-degree felony in Utah state court, for which he received a 180-day jail sentence. PSR at 18 ¶ 88. That sentence was also the product of Utah's indeterminate sentencing regime. *See generally* Utah Code Ann. § 76-3-203 (West).

Noble's residences and vehicle during which officers recovered large quantities of drugs; and statements by Noble and his co-conspirators admitting to the charged conduct. PSR at 5-12 ¶¶ 7-55. Where, as here, a defendant neither "assert[s] that he is innocent of the charged crime" nor identified any "ostensible weaknesses in the government's proof of guilt [that] would have made it rational for him to forgo his very favorable plea agreement," there is little reason to credit his after-the-fact allegation that he would have insisted on a trial. *Dominguez*, 998 F.3d at 1114-15; *see also United States v. Saucedo-Avalos*, 753 F. App'x 561, 564 (10th Cir. 2018) (unpublished) (holding that defendant's "mere allegation of having insisted on going to trial is not enough" to show prejudice where "he did not dispute that a jury likely would have convicted him" and "the record did not reveal any viable defense to the charge"); *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (rejecting contention that petitioner would have rejected the plea and proceeded to trial, in part because the petitioner "never contended that he was innocent of the crimes charged, nor has he offered any potentially meritorious defense").

Finally, Noble attempts to show prejudice by arguing that his attorney "failed to preserve or pursue available challenges to the drug quantity attributed to [him] and to the aggravating-role enhancement," which could have affected his overall "sentencing exposure." ECF 1 at 7. There are several problems with this argument. For one, Noble's threadbare reference to "available challenges" is "insufficient to state a valid claim under § 2255." *United States v. Hall*, 746 F. App'x 773, 776 (10th Cir. 2018) (unpublished) (listing cases); *Zajac v. United States*, 154 F. Supp. 3d 1230, 1236 (D. Utah 2015), *aff'd*, 680 F. App'x 776 (10th Cir. 2017) (unpublished) ("Allegations that are speculative, vague, or conclusory are insufficient to satisfy the *Strickland* standard."). Noble does not explain what those "challenges" would have been, or why they would have had any merit, particularly given Noble's Rule 11(c)(1)(C) plea agreement and

stipulated 240-month sentence. And while this Court "liberally construe[s] *pro se* filings," it does "not assume the role of advocate." *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). It is not this Court's (or the government's) "job to find the authority, assess its application to the unique facts" of this case, and then make Noble's prejudice argument "for him." *Meek v. Martin*, 74 F.4th 1223, 1276–77 (10th Cir. 2023) (cleaned up); *see also United States v. Banks*, 884 F.3d 998, 1024 (10th Cir. 2018) (the Court will not "fill in the blanks of a litigant's inadequate brief").

Noble appears to contend that he suffered prejudice from his counsel's deficient advice about the effect of his guilty plea on his state case, because, absent that advice, his attorney somehow could have negotiated a more favorable plea by leveraging arguments about drug quantities and Noble's supervisory role in the criminal activity. ECF 1 at 4, 7. But that is not a cognizable theory of *Strickland* prejudice in the first place. *See Dominguez*, 998 F.3d at 1109-10 (casting significant doubt on the "better-plea theory" of prejudice); *see also, e.g.*, *Reyes-Pantoja v. United States*, No. 2:24-CV-765-CW, 2025 WL 1262739, at *5 (D. Utah Apr. 30, 2025) ("[S]uch a claim—that he might have gotten a better plea deal—has been held to be insufficient to establish prejudice under *Strickland*."); *United States v. Been*, No. 21-CR-00493-GKF-3, 2023 WL 6847573, at *3 (N.D. Okla. Oct. 17, 2023) (same). And in any event, Noble comes nowhere close to showing—as he must—a reasonable probability that, absent counsel's alleged misadvise about his state murder sentence, Noble would have been able to negotiate (and the United States would have offered, and the Court would have accepted) a sentence below 240-months' imprisonment based on any challenge to the drug quantities or his aggravating role enhancement.

In sum, Noble told the court below under oath, in writing and orally, that he understood the consequences of his decision to plead guilty—including that his plea agreement was "solely

between [him] and the United States Attorney for the District of Utah and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities" (Crim. ECF at 8 ¶ 13)—and that he wanted to plead guilty rather than go to trial because he was guilty of the charged offenses. He fails to muster any evidence contemporaneous with his guilty plea that either substantiates his claims today or otherwise supports second guessing his "expressed preferences." *Lee*, 582 U.S. at 369.

**B. Noble knowingly and intelligently pled guilty**

In his second ground for relief, Noble contends that his guilty plea was not knowing and intelligent because it was "induced by an unfulfilled" promise that it "secured" the "global disposition" discussed above. ECF 1 at 5. That argument also fails.

To be constitutionally valid, due process requires that a guilty plea must be knowing and intelligent. *Dominguez*, 998 F.3d at 1105. "[F]or a plea to be knowing and intelligent, the defendant must have a full understanding of what the plea connotes and of its consequence." *Id.* (quotation omitted). The Tenth Circuit has instructed that "a defendant knowingly and intelligently pleads guilty if he understands his plea's 'direct consequences,' even if he does not also 'understand every collateral consequence of the plea.'" *Id.* (quoting *United States v. Hurlich*, 293 F.3d 1223, 1230-31 (10th Cir. 2002)).

As discussed above, Noble plainly understood the direct consequences of his federal guilty plea. *See* Part II.A.2. He stated under oath, in writing, that no one made any "promises[] or representations" that caused him to plead guilty, other than the terms set forth in his plea agreement. Crim. ECF 338 at 8 ¶ 3. This Court conducted a thorough Rule 11 colloquy with Noble, during which Noble confirmed that he fully understood the terms of his plea agreement and the consequences of pleading guilty. Plea Tr. at 6. "[S]uch solemn declarations made in open court carry a strong presumption of verity" and "should be regarded as conclusive in the

absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *Dominguez*, 998 F.3d at 1106 (quotation omitted). Noble fails to rebut that strong presumption.

Indeed, "nothing in the record shows that Mr. [Noble's] guilty plea was anything but knowing and voluntary." *United States v. Hernandez*, 277 F. App'x 775, 777 (10th Cir. 2008) (unpublished) (rejecting defendant's argument that his plea was not knowing and voluntary, and emphasizing that during his "plea colloquy, he stated that he had received no threats or inducements for him to plead guilty and that his plea was knowing and voluntary"). Noble's federal guilty plea had no bearing—collateral or otherwise—on his wholly separate state prosecution for murder. His federal plea agreement plainly said so. *See* Crim. ECF 338 at 8 ¶ 13. And even if Noble's guilty plea was later used in the state proceedings, that would, at most, amount to a collateral consequence of pleading guilty—not a violation of his Due Process rights. *Cf. Heath v. Jones*, 941 F.2d 1126, 1139 (11th Cir. 1991) ("the use of a plea as a sentencing enhancement for another crime is considered a collateral, not a direct, consequence") (listing cases); *United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997).

Another problem with Noble's Due Process claim: he waived his collateral-attack rights. Courts in this Circuit apply a three-part test to determine if a collateral-attack waiver is enforceable: "(1) whether the disputed [claim] falls within the scope of the waiver of [§ 2255] rights; (2) whether the defendant knowingly and voluntarily waived his [§ 2255] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.'" *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (first brackets in original)); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th

Cir. 2009) (applying *Hahn*'s three-part test to a collateral attack proceeding). All three parts are satisfied here.

First, the claim falls within the scope of Noble's collateral-attack waiver. As in *Viera*, the waiver provision in Noble's plea agreement "not only . . . waives his rights to collaterally attack but expressly names § 2255 motions as waived." 674 F.3d at 1217; *see* Crim. ECF 338 at 6, ¶ 12(d)(2). The provision makes clear that the word "'sentence' appearing throughout this waiver provision is being used broadly and applies to all aspects of the Court's sentencing authority, including but not limited to . . . the imposition of imprisonment." Crim. ECF 338 at 6-7, ¶ 12(d)(4). And Noble's waiver unambiguously includes his right to challenge his sentence under § 2255 "except on the issue of ineffective assistance of counsel." *Id*. at 6 ¶ 12(d)(2).

Second, Noble knowingly and voluntarily waived his collateral-attack rights. To determine whether a waiver was knowing and voluntary, this Court considers "two sources: (1) the text of the plea agreement and (2) the plea colloquy." *United States v. Edgar*, 348 F.3d 867, 872 (10th Cir. 2003). Both support enforcing the waiver here. As detailed above, Noble acknowledged and agreed in his plea agreement that his decision to enter the plea "was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea." Crim. ECF 338 at 9 ¶ 7. He further stated that he (i) had "no mental reservations concerning the plea"; (ii) "discussed this case and this plea with [his] lawyer as much as [he] wish[ed]" and still had "no additional questions"; (iii) was satisfied with his lawyer; and (iv) was not "under the influence of any drugs, medication, or intoxicants" "when [he] made the decision to enter the plea." *Id*. at 9 ¶¶ 5-8. And Noble expressly agreed that he "knowingly, voluntarily, and expressly waive[d his] right to challenge [his] sentence . . . and [his] conviction . . . in any collateral review motion, writ

or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255[.]" *Id.* at 6 ¶ 12(d)(2).

At the change-of-plea hearing, the Court confirmed that Noble knowingly and voluntarily wished to plead guilty, with a full understanding of the terms of his plea agreement and the consequences of his plea. Noble fails to "overcome his solemn declarations that his plea was knowing and voluntary." *Torres-Flores v. United States*, No. 2:06-CR-470-TS, 2008 WL 2468360, at *7 (D. Utah June 17, 2008); *Dominguez*, 998 F.3d at 1106. To be sure, ineffective assistance of counsel can render a plea unknowing or involuntary. *See United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). But, for the reasons discussed in Part II.A, *supra*, Noble fails to invalidate his plea—and the collateral-attack waiver he executed—on that ground.

Finally, enforcing Noble's waiver will not result in a miscarriage of justice. "[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Viera*, 674 F.3d at 1219 (quotations omitted). Only the second situation is conceivably at issue here. And for the same reasons discussed above, Noble's ineffective-assistance allegations are insufficient to invalidate his collateral-attack waiver.

**C. Noble's claims do not warrant an evidentiary hearing**

A district court need not hold an evidentiary hearing on a § 2255 motion where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the reasons discussed above, the record conclusively shows that Noble is not entitled to relief for his ineffective-assistance or due process claims. The Court

can and should dismiss his motion without holding an evidentiary hearing. *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995); *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012).

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Noble's § 2255 motion without holding an evidentiary hearing.

RESPECTFULLY SUBMITTED on this 28th day of October, 2026.

MELISSA HOLYOAK
United States Attorney

*/s/Briggs Matheson*
BRIGGS MATHESON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and a copy via the U.S. Mail of the foregoing United States' Response to Petitioner's Motion to Vacate Pursuant to 28 U.S.C. § 2255 was served to all parties named below, this 28th day of October, 2026.

Caile Edward Noble
10278-081
SANDSTONE FCI
INMATE MAIL/PARCELS
PO BOX 1000
SANDSTONE, MN 55072

*/s/ Amanda Macfarlane*
Amanda Macfarlane
Paralegal