# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 2:22-cr-00491-TS-1 |
| CAILE NOBLE, | |
| Defendant. | |

**CHANGE OF PLEA**

**BEFORE MAGISTRATE JUDGE JARED C. BENNETT**

APRIL 3, 2025

1:32 p.m. to 1:46 p.m.

Reported by:
Michelle B. Gonsalves, RPR, CRR, CBC, CSR
351 South West Temple, Room 7.431, Salt Lake City, Utah 84101
michelle_gonsalves@utd.uscourts.gov || 801.783.8657

## APPEARANCES

**FOR THE PLAINTIFF:**

Seth A. Nielsen, Esq.
**U.S. ATTORNEYS OFFICE**
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801)834-9449
Email: seth.nielsen@usdoj.gov

**FOR THE DEFENDANT:**

Earl G. Xaiz, Esq.
**YENGICH & XAIZ**
560 South 300 East, Suite 105
Salt Lake City, Utah 84111
Telephone: (801)355-0320
Email: earlxaiz@gmail.com

**April 3, 2025 Salt Lake City, Utah 1:32 p.m.**

**P R O C E E D I N G S**

* * *

**THE COURT:** Thank you, please be seated. Good afternoon, let's go on the record in the case of *United States v. Caile Noble*. This is case, 2:22-cr-491. We're here today for purposes of what we anticipate will be a change of plea.

Before we get started, could I please have counsel make their appearances, beginning with the United States.

**MR. NIELSEN:** Seth Nielsen for the United States.

**THE COURT:** Thank you.

**MR. XAIZ:** Good afternoon, Your Honor, Earl Xaiz on appearing on behalf of Mr. Noble.

**THE COURT:** Thanks. And I'll note that Mr. Noble is present in the courtroom today.

Mr. Noble, I need to make you aware of a couple of important constitutional rights. No problem, yeah, make yourself comfortable. I just need to make you aware of an important right that you have prior to taking your plea; and that is, you have the right to have your guilty plea taken before the district court judge who will be imposing sentencing in this case, which will be Judge Stewart.

Because I will not be imposing sentence, I need to have your permission to take your plea today. I have received a consent form that is dated today, signed by you, Mr. Xaiz,

Mr. Nielsen, and Judge Stewart, all giving me permission to take your plea. Do I have your permission to take your plea?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Thank you. I appreciate the opportunity to serve.

Before taking your plea, I have to have a rather lengthy conversation with you that will cover several topics. First, I want to talk with you about your health because I want to make sure you're feeling well enough to make an important decision like pleading guilty.

Next, we'll talk about the rights you have, and the rights you will waive if you plead guilty.

Following that, we'll talk about sentencing. Specifically, we'll talk about the maximum penalties; next, we'll talk about the sentencing guidelines; and then we'll talk about the impacts to your civil rights as a result of a guilty plea.

Following that discussion, we'll talk about the plea agreement, and then we'll talk about the facts of the case.

After all of that, I'll then ask you for your plea. Do you have any questions about the topics that we'll cover today?

**THE DEFENDANT:** No, Your Honor, I do not.

**THE COURT:** All right. Thank you.

In order for us to have this conversation, I need to

have you placed under oath, so would you please stand and raise your right hand as best you can, and Ms. Mumford will now swear you in.

**THE COURTROOM DEPUTY:** You do solemnly swear that the answers you shall give to the questions posed by the Court to be the truth, the whole truth, and nothing but the truth. If so, please say I do.

**THE DEFENDANT:** I do.

**THE COURTROOM DEPUTY:** Thank you.

**THE COURT:** Thank you, Mr. Noble. Now that you've been placed under oath, I need to make you aware that if you answer any of my questions untruthfully today, those answers could be used against you in a subsequent prosecution for perjury. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Let's go ahead and talk about your health because, again, I want to make sure you're feeling well enough to make an important decision like pleading guilty today. How are you doing today, sir?

**THE DEFENDANT:** Pardon me?

**THE COURT:** How are you feeling today?

**THE DEFENDANT:** Feeling good, Your Honor.

**THE COURT:** I'm glad to hear that. Are you feeling strong and well enough to think and reason today?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Are you feeling well enough to make decisions today?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Are you currently under the influence of any substance that would impede your ability to understand or answer my questions?

**THE DEFENDANT:** None.

**THE COURT:** Have you had a chance to speak with Mr. Xaiz about the consequences of pleading guilty?

**THE DEFENDANT:** I have, sir.

**THE COURT:** Were you able to ask all the questions you want?

**THE DEFENDANT:** And some.

**THE COURT:** And were those questions answered?

**THE DEFENDANT:** Yes, they were.

**THE COURT:** Are you satisfied with Mr. Xaiz's services?

**THE DEFENDANT:** I'm very grateful and satisfied, yes, sir.

**THE COURT:** What is your current age?

**THE DEFENDANT:** I'm 67, Your Honor.

**THE COURT:** How many years of schooling have you completed?

**THE DEFENDANT:** I got my GED in Victorville.

**THE COURT:** Okay. I now want to talk with you about

the rights that you have, and the rights that you will waive if you plead guilty today. You have the right to persist in you're not guilty plea, and you have the right to go to trial.

At trial the United States will bear the burden of proving beyond a reasonable doubt each and every element of the offenses charged against you.

As to Count 1, conspiracy to distribute methamphetamine, the United States will have to prove that you and at least another person came to an agreement to violate the federal drug laws by distributing methamphetamine, a Schedule II controlled substance, and you knowingly and voluntarily joined that agreement, and you're aware of the illegal purpose of the group, and that there was interdependence among the members of the conspiracy.

As to the Count No. 2, conspiracy to commit money laundering, the United States is going to have to prove at trial that two or more of you agreed to accomplish an unlawful plan that is to conduct financial transactions knowing that these financial transactions represented the proceeds from an unlawful activity; namely, the distribution of methamphetamine, that you knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity, the property was, in fact, the proceeds of this unlawful activity, and that there was interdependence between you and members of the conspiracy.

All 12 members of the jury will have to agree that you are guilty in order for you to be convicted of the crimes charged.

At trial you will be represented by a lawyer. Your lawyer can cross-examine all of the Government's witnesses and can object to the presentation of the Government's evidence.

At trial you could put on your own case if you wanted to. You wouldn't have to, but if you chose to do so you could compel people to come in and testify by subpoena, even if you couldn't afford to bring them into court yourself. And you could testify if you wanted to, but you wouldn't have to. And if you chose not to testify, the jury would be instructed that they could not consider your silence as evidence of guilt.

Mr. Noble, do you understand that if you proceed today with a guilty plea, there will be no trial of any kind, and the rights that I just mentioned will be waived?

**THE DEFENDANT:** I understand, sir.

**THE COURT:** Let's now talk about sentencing. I'll begin by talking about the maximum penalties, not because I think they'll be imposed. In fact, they rarely are. That's especially true where here you have an agreement with the United States. But the law requires me to inform you of those maximums, which is why I'll do so now.

As to Count 1 of the Indictment there is a maximum term of imprisonment of life, there is a minimum mandatory

sentence of 10 years, a fine of $10 million, and a term of supervised release of five years plus any applicable forfeiture.

As to Count 2 there is a maximum term of imprisonment of 10 years, a fine of up to $250,000, and a term of supervised release of three years.

In addition to that, there is a $100 special assessment fee that will become due and payable at the time of sentencing for each count of conviction. So in this case, that would be a $200 special assessment fee.

Any questions, Mr. Noble, about the maximums here?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. let's now talk about how the sentencing guidelines may impact a sentence in your case.

The sentencing guidelines are a starting point --

**MR. XAIZ:** Sorry, Your Honor, just clarifying a point.

**THE COURT:** Do you need a moment?

**MR. XAIZ:** No, we're good, Your Honor.

**THE COURT:** So the guidelines provide a starting point for the judge to calculate a sentence. The judge has to calculate the guidelines but does not have to follow them. The judge can do something different.

Now, the guidelines are calculated using two important scores. The first score is called a criminal history

score; that's based off of your criminal history.

The second score is called an offense score; that's based off of the way the offenses at issue were committed.

Once those two scores are calculated, the guidelines provide the judge with the range of punishment. It may include a term of imprisonment, fines, or other types of supervision.

Again, the judge must start with and consider the guidelines, but may decide to do something different. Do you understand how the guidelines may impact your sentence?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Now because we anticipate that you'll plead guilty today under Federal Rule of Criminal Procedure 11(c)(1)(C), what this means is if the District Court judge does not accept the agreement that you have reached with the United States, you would be able to withdraw your guilty plea; do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Let's now talk about the impacts to your civil rights as a result of the guilty plea:

If you're a citizen of the United States, you would not be allowed to vote for a time;

You will not be allowed to serve on a jury; and

You will not be allowed to possess a firearm;

If you're not a citizen of the United States, a guilty plea will impact your ability to remain in and return to

the United States.

Any questions about the impacts to your civil rights?

**THE DEFENDANT:** No, sir.

**THE COURT:** Let's now talk about the plea agreement. Have you had a chance to go over that plea agreement with Mr. Xaiz?

**THE DEFENDANT:** I have.

**THE COURT:** Have you been able to go over it thoroughly?

**THE DEFENDANT:** Very thoroughly.

**THE COURT:** Good.

**MR. XAIZ:** I could confirm that, Your Honor.

**THE COURT:** Excellent. Have you been able to ask all the questions you want about that agreement?

**THE DEFENDANT:** I have.

**THE COURT:** And were those questions answered?

**THE DEFENDANT:** They sure were.

**THE COURT:** Has anyone forced you or threatened you to sign this agreement?

**THE DEFENDANT:** No, but myself.

**THE COURT:** Has anyone forced you or threatened you to plead guilty today?

**THE DEFENDANT:** No, sir.

**THE COURT:** Let's go ahead and review briefly the material terms and conditions of the agreement to make sure

that you understand what you're agreeing to do, and what the United States is agreeing to do.

I'm looking in the middle of page 5, in Paragraph 12. Here it says you agree to plead guilty to Counts 1 and 2 of the Indictment; is that right?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Next, it says that you agree that a sentence of 240 months' imprisonment, and five years of supervised release is a reasonable sentence; is that right?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** If we turn the page, over to page 6, we see Paragraph 12(c) that discusses relevant conduct. Basically what this means is that the district court judge will consider the context in which the crime was committed.

What that means is there may be acts in this context that you are not charged with, and you're not pleading guilty to, but it is still something that the judge may take into account at sentencing. Do you understand that the judge may consider relevant conduct at sentencing?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Next, the rest of page 6 and some of page 7 contains an appeal waiver. This appeal waiver says you agree not to appeal either your conviction or your sentence unless the judge sentences you to more time than you have agreed to in this agreement, or there has been ineffective

assistance of counsel. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Next, in Paragraph 12(e) on page 7, it mentions a presentence report and financial information. A presentence report is an important document that helps the judge calculate the guideline scores we spoke about a few minutes ago, and it also helps the judge know more about you personally. It's a very important document and needs to be accurate to be useful. Do you agree to provide truthful and complete information in the preparation of that report?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Next, there is a paragraph for the rest of page 7, Paragraph 12(f), that discusses forfeiture.

Essentially, what this means is you agree that for all the items that are listed in Paragraph 12(f), that you will give up or waive any property interest that you might have. You may not have, but to the extent that you have any property interest, you're agreeing to waive any property interest in those items. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Nielsen, is there any other material term or condition of this agreement that needs to be placed on the record in open court today?

**MR. NIELSEN:** No, there's not.

**THE COURT:** Mr. Xaiz?

**MR. XAIZ:** No, Your Honor, there are not.

**THE COURT:** All right. Thank you.

Now, Mr. Noble, before I can accept the guilty plea, I have to be convinced there is a factual basis that supports each and every element of the offense charged, or in this case the offenses charged.

On Page 11 and carrying over to the middle -- or excuse me, on page 4, Paragraph 11, carrying over to the middle of page 5, there is a statement of facts. Have you had a chance to go over this statement of facts with Mr. Xaiz?

**THE DEFENDANT:** Yes, I have -- I have.

**THE COURT:** Are you satisfied that these facts are accurate?

**THE DEFENDANT:** Yes, Your Honor, I am.

**THE COURT:** Mr. Noble, as to Counts 1 and 2 of the Indictment, how do you plead, guilty or not guilty?

**THE DEFENDANT:** I plead guilty, Your Honor.

**THE COURT:** I accept your guilty plea, and I find that it was made knowingly and voluntarily, and that there is a factual basis that supports each and every element of the offense charged -- offenses charged. Therefore, you are adjudged guilty of Counts 1 and 2 of the Indictment.

Mr. Nielsen, what is sentencing -- or excuse me -- Ms. Mumford, when is sentencing scheduled?

**THE COURTROOM DEPUTY:** June 11 at 11:00 before Judge

Stewart.

**THE COURT:** Thank you.

All right, so the probation office will be reaching out to Mr. Xaiz to have an interview with you to prepare that presentence report that we spoke about a few minutes ago. It's a very important document, and I would urge you to cooperate in the preparation of that document to the extent Mr. Xaiz recommends, because it is that important.

Given the current custody status of Mr. Noble, and the guilty pleas that I just took, Mr. Xaiz, I assuming we're not seeking a change in custody status?

**MR. XAIZ:** We are not, Your Honor.

**THE COURT:** All right. Then Mr. Noble will remain in the custody of the United States Attorney General pending the resolution of the case at sentencing.

Mr. Nielsen, anything else that we need to take up today?

**MR. NIELSEN:** Nothing today.

**THE COURT:** Thank you.

Mr. Xaiz, anything further?

**MR. XAIZ:** We have nothing, Your honor. Thank you.

**THE COURT:** Thank you.

Mr. Noble, I wish you the best of luck moving forward.

**THE DEFENDANT:** Your Honor, I want to thank for

today, thank you very much.

**THE COURT:** You're welcome. We'll be in recess.

(The hearing was adjourned at 1:47 p.m.)

# C E R T I F I C A T E

STATE OF UTAH )<br>
)<br>
) ss.<br>
)<br>
COUNTY OF SALT LAKE )

This is to certify that the proceedings in the foregoing matter were reported by me, Michelle Gonsalves, RPR, CRR, CBC, CSR, in stenotype and thereafter transcribed into written form;

That said proceedings were taken at the time and place herein named;

I further certify that I am not of kin or otherwise associated with any of the parties of said cause of action and that I am not interested in the event thereof.

In witness whereof I have subscribed my name this 16th day of September 2026.

*Michelle Gonsalves*

Michelle Gonsalves, RPR, CRR, CBC, CSR